BLACK AND FARWELL

*v*

HILLS AND GAMMON.

</div>

1.  INFANT — *deed of — ratification.*    If an infant conveys his land, and on attaining his majority ratifies the conveyance, and then conveys to another person for a valuable consideration, the last grantee, having notice of the deed made in infancy, but no notice of the ratification, will hold the land. ✱

2.   One has as perfect a legal right to purchase land which his grantor has conveyed during infancy, as to purchase land that has never been conveyed at all, and he is not to be denied the position of an innocent purchaser because he has notice of the deed made in infancy.

3.   If the ratification of a deed made in infancy is by a written instrument, such instrument is within the policy of the registry laws; if by acts *in pais*, notice of such acts must be brought home to a subsequent purchaser.

APPEAL from the Circuit Court of Schuyler county; the Hon. C. L. HIGBEE, Judge, presiding.

This was a bill in chancery, filed at the October term, 1858, of the Circuit Court of Schuyler county, by the appellants, to compel a conveyance by the appellees of their title to certain lands.    The Circuit Court denied the relief to the extent prayed by the appellants, and they brought the case to this court.    The facts appear in the opinion.

Messrs. HAY & SKINNER, for the Appellants, cited the following authorities:

The record of the deed from Hills and the circumstances proved, show bad faith in appellees in obtaining the subsequent deed. If not full notice, they are enough to have put appellee upon inquiry. 24 Ill. 57, 59.

The acts of Hills, when of age, confirmed his conveyance, 2 Kent, 237, 238, 239; 1 Washburn on R. E. 304; 1 Am. Lead. Cases, 112, 113, 114; 14 Mass. 457, 460, 463; 10 N. H. 194, 196; 5 Monroe, 344, 353, 354, 355; 23 Maine, 517, 524; 3 Vermont, 353, 359.

Messrs. WARREN, WHEAT AND BAILEY, for the Appellees, relied on the following points and authorities:

1. The record of the deed from Hills to Black cannot be considered here because there is no averment in the bill that the deed ever was recorded, and there is no notice to Gammon shown in the proof.

2. The whole evidence fails to show that Gammon had notice of the sale to Black & Farwell, and if the subsequent bond by Hills amounted to a ratification of the contract made by an infant, yet that would only affect the parties to that contract, and would not affect the rights of a third party without notice. 1 Gilm. 331.

3. There is no evidence, either actual or constructive, that Gammon had any notice of the bond from Hills to Black & Farwell, prior to the date of his deed, 19th of October, 1858.

4. If the recording of the voidable deed is to be regarded as notice, then a purchaser of a grantor who has the right to avoid his grant, must be taken to know not only the fact of there being a voidable deed, but the additional fact that that deed had been confirmed by the grantee before he purchased, by a sale to other persons.

5. The acts of Hills when of age, do not confirm the deed to Black —

*First.* Because the note given by Black to Hills for $2,100

24—36 ILL.

was destroyed by Hills after he had sold to Black & Farwell, as worthless.

*Second.* Because the bond was not made to the same party as the deed, and was in itself a repudiation of the deed, and not a confirmation. 2 Kent, 238, 239.

6. The declarations of Hills and White, as sworn to by the witness, cannot affect the rights of Gammon, because they are mere hearsay.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The testimony in this case is somewhat contradictory, but we consider the following state of facts sufficiently proven :

On the 13th of August, 1857, the appellee, Henry Hills, then a minor, sold and conveyed to Black, one of the appellants, two tracts of land, not adjoining each other, and described as the E. $\frac{1}{2}$ S. W. and N. $\frac{1}{2}$ N. W. 31, 2 N., 1 W. Hills attained his majority on the 28th September, 1858, and on that day executed to the appellants, Black & Farwell, his bond for the convey-ance to them of the above described lands, upon the payment of seventeen hundred dollars. At the same time that he exe-cuted this bond, he indorsed upon it a receipt for $1,000, paid by Black. It appears, from the evidence, that this receipt was in settlement of the transactions which had previously occurred between Hills and Black. In October, 1858, Hills executed one receipt for $300, paid by Farwell, and another for $600, paid by Black. On the 17th of October, 1858, Black took pos-session of the east half S. W. 31, above described, but neither he nor Farwell has ever had possession of the other tract. The deed to Black, made while Hills was an infant, was recorded, but the bond to Black and Farwell was not.

On the 19th of October, 1858, the defendant, Gammon, bought of Hills both the above described tracts, paid him a valuable consideration in property and money, and received a deed. We find nothing in the record showing that Gammon had any knowledge whatever of the previous transaction be-tween Hills, Black and Farwell, or that this purchase was made

with any fraudulent intent. Hills received from Gammon a pair of mules, a carriage and harness, valued at $750, his note, and some money. The precise amount does not appear.

On the foregoing state of facts, the appellants filed their bill for a conveyance from Gammon to themselves of both tracts of land. The court below decreed a conveyance of the E. ½ of S. W. 31, of which Black was in possession at the time of the sale by Hills to Gammon, but refused it as to the other tract. This refusal is now assigned for error.

It is urged by the counsel for the appellants, that when Gammon bought of Hills, he had constructive notice, through the record, that Hills, while a minor, had conveyed to Black, and that he bought with knowledge that such conveyance might be ratified, and subject to the chances of ratification. Expressed as an abstract proposition, this would imply that a written ratification by a grantor, after he reaches his majority, of a recorded deed made by him while a minor, need not be recorded as against a subsequent purchaser. No authority to this effect has been adduced, and we have searched the books in vain for the decisions of other courts upon this point. As a question of principle, we have little difficulty in saying, that a subsequent purchaser, for a valuable consideration, will hold the land conveyed as against a ratification, by the grantor, of a deed made during his minority, of which ratification the subsequent purchaser has neither actual nor constructive notice.

The argument that the subsequent purchaser takes with knowledge that his grantor may have ratified, and therefore takes subject to that risk, would apply as well to all conveyances. For in every instance where a deed is made, the grantee knows that his grantor may have made a former conveyance, and it is precisely to protect the innocent purchaser against such chances, that our registry laws are enacted. It can, in no just sense, be said, that the grantee of a person who had conveyed during his infancy, is not to be deemed an innocent purchaser, if he has notice of the first deed. He has as perfect a legal right to purchase land which his grantor had sold during minority, as he would have to purchase land that had never been

conveyed at all. The moment the second deed is made, the deed made in infancy is disaffirmed, and becomes void. It is as if it had never been. This right of disaffirmance is necessarily given by the law to prevent great frauds. Yet the right would be practically of little value to the minor, if the person buying of him, after he becomes of age, is to be considered as incurring, in any way, the censure of the law, and to be therefore denied the position of an innocent purchaser. It does not devolve upon him to investigate whether, in the particular case, his grantor ought to disaffirm, as a question of morals between him and the first grantee. It is enough for him to know that the law gives the absolute right to disaffirm in every case, and he may presume that his grantor is exercising that right for reasons that would be as satisfactory in the forum of conscience as the act is valid in a court of law.

The deed of an infant may be ratified by a written instrument, or by acts *in pais*, or by long acquiescence. While it is true that the title, after ratification, is held, for most purposes, to relate back to the original deed, yet it is the ratification which is the effective act, and which rescues the deed from its liability, at any moment, to be made a nullity. We have no doubt that, if the ratification is by means of a written instrument, it is within the policy of the registry laws. It is the object of those laws to disclose to all the world the exact condition of a title, and written instruments relating to land, not appearing there, are to be taken as not existing, unless the knowledge of them is brought home in some other way. If the ratification is by acts *in pais*, then a subsequent purchaser must be affected with notice of those acts. Of course, possession by the first grantee, would be notice, not only of the original deed, but of any acts of ratification.

If these principles are correctly laid down, this case has been rightly decided. It does not matter whether the instrument executed by Hills to Black & Farwell should be regarded as a ratification or a new sale. In the view we have taken of this case, the result would be the same. The appellants are entitled to a deed for the tract of which Black had actual pos-

session at the date of Gammon's purchase.   As to the other tract, the instrument of ratification being unrecorded, and neither Black nor Farwell being in possession, the title must be left in Gammon.

The case of *Ogden* v. *Haven*, 24 Ill. 59, depends upon quite other principles than those which control this case.   There, there was actual notice to the subsequent incumbrancer.

<div align="right">*Decree affirmed.*</div>