Case 8.—ACTION BY JOHN PHILIP POSTEL AND OTHERS AGAINST THE BOARD OF TRUSTEES OF FORDSVILLE GRADED SCHOOL AND OTHERS TO RECOVER PROPERTY PAID FOR BY PROCEEDS OF VOID BONDS.— September 26.

## Board of Trustees of Fordsville, &c. v. Postel, &c.

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiffs. Defendants appeal. Affirmed.

1. Trusts—Following Trust Funds—Sale of Void Bonds—Right of Bondholders—The holders of void bonds issued by a school district in violation of Constitution, sec. 157, may obtain relief, under the doctrine that equity follows a fund, on showing that the proceeds of the bonds were used exclusively in procuring a lot, schoolhouse thereon, and school furniture.

2. Same—Statutory Provisions—Ky. Stats. 1903, sec. 2353, providing that, when a deed shall be made to one person and the consideration shall be paid by another, no trust shall result, but this shall not apply to a case where a grantee takes a deed in his name without the consent of the person paying the consideration, does not affect the equitable doctrine, that equity follows a fund and compels a restitution, as long as it can be identified.

3. Appeal—Harmless Error—Judgment—Where bonds issued by a school district are void, and the proceeds are used in the erection of a schoolhouse, that the judgment in favor of the holders of the bonds in a suit to follow the proceeds thereof provides for a conveyance to them of the property, instead of a sale thereof, is not prejudicial, where the property is not of more value than the fund derived from the bonds.

4. Parties—Real Party in Interest—The holders of bonds illegally issued by a school district stand in the place of the original purchasers of the bonds, and may maintain a suit in their name as the real party in interest to recover from the proceeds of the property purchased by the proceeds of the sale of the bonds the amount due them.

Board of Trustees of Fordsville, &c. v. Postel, &c.

GLENN & RINGO for appellants.

### POINTS AND AUTHORITIES.

1. Demurrer to petition and amended petition should have been sustained. (M., & L. T. P. Co. v. Wiggins, 20 Ky. Law Rep., 724; Sparks v. Robinson, 24 Ky. Law Rep., 2336.)

2. The transaction recited in the pleadings and shown in the proof did not create a trust. No act of bad faith being shown, no trust results. The constructive trust is abolished by statute in Kentucky, except to meet conditions which do not exist in this case. (Ky. Stats., sec. 2353.)

3. Neither a constructive nor a resulting trust can arise in favor of plaintiffs from the transaction recited in this record. The title to this property was neither made to a third party without the knowledge or consent of the one paying the consideration, nor were any trust funds invested in this property and the title wrongfully taken to another without the knowledge or consent of any cestui que trust. (Harland v. Eilke, 18 Ky. Law Rep., 1096; Farris v. Dunn, 7 Bush, 276; Graham v. King, 34 S. W., 430 [Ky.].

4. A resulting trust is not raised where one party borrows money from another to be invested in real estate and takes title to himself. (Levi v. Williams, 50 S. W., 528 [Tex.]; Am. & Eng. Ency. of Law, vol. 15, 1149, 2d Ed.)

5. The basis of a constructive trust is fraud, actual or constructive, and it must rest upon some act of bad faith or evil intent attending upon the manner and existing at the time of acquiring the title. (Am. & Eng. Ency. of Law, vol. 15, 1184-1186-1192, 2d Ed.; Graham v. King, 34 S. W., 430 [Ky.]; 2 Pomeroy Eq. Jur., secs. 1030-1044-1053; Overton v. Woolfolk. 6 Dana, 373.)

6. Out of a mere breach of contract, in the absence of fraud, equity will not create a constructive trust. (Latta v. Kilburn, 150 U. S., 524; Am. & Eng. Ency. of Law, vol. 15, 1186, 2d Ed.)

7. Equity will not invoke the doctrine of constructive trust in aid of one guilty of a violation of the Constitution of the State or where the contract was against public policy. Plaintiffs were particeps criminis in seeking to violate an express provision of the Constitution of the State. In doing so they dealt with a municipality, which acted by its officers and agents, and in so doing are chargeable with notice of the powers which the corporation possesses and are held responsible accordingly. In such a situation "equity will no more raise a resulting trust in favor of the bondholders than the law will raise an implied assumpsit against a public policy so strongly declared." (Brock v.

Board of Trustees of Fordsville, &c. v. Postel, &c.

Brock, 9 L. R. A., 287 [Ala.]; Finlayson v. Finlayson, 3 L. R. A., 801 [Ore.]; Ford's Ex'or v. Lewis, 10 B. M., 127; Wheeler v. Sage, 1 Wall. (U. S.), 518; Am. & Eng. Ency. of Law, vol. 15, 1203, 2d Ed.; Thomas v. Richmond, 12 Wall., 349, 20 L. Ed., 453; Leitchfield v. Ballou, 114 U. S., 190.)

8. Out of an illegal and void transaction, as the one here was, no legal or equitable rights can grow; and this court will not lend its aid to give relief to those in the position in which appellees have placed themselves. As held by this court in the cases of Grady v. Pruitt and Grady v. Landrum, the provisions of sec. 157 of the Constitution can not be disregarded in order to give relief to a party occupying the position of either one of plaintiffs in this case. (Const. of Ky., sec. 157; Grady v. Pruitt, 63 S. W., 283 [Ky.]; Grady v. Landrum, 63 S. W., 284 [Ky.]; Maddox v. Hightshue, 39 Ind., 95; Mustard v. Wohlford, 15 Gratt., 329; Gliddon v. Strupler, 52 Pa., 402; Central Land Co. v. Laidley, 3 L. R. A., 826 [W. Va.].)

9. No trust arises where the complaining party acted upon his own judgment and investigation in the matter. (Am. & Eng. Ency. of Law, vol. 15, 1186, 2d Ed.)

10. Plaintiff can not be subrogated even if Gaylord, Blessing & Co. had any enforcible rights. Plaintiffs are volunteers, and do not come within the rule which would authorize them to be subrogated to the rights of Gaylord, Blessing & Co., had that concern any rights. (Lawson on Rights & Remedies, sec. 3047, vol. 6; 30 L. R. A., 829; Cayson v. Wallace, 4 Bush, 386.)

11. There was no mistake of law between appellees and the district, as there was no contract between them. A mere mistake of law, not accompanied by other circumstances, does not afford grounds for relief in equity. (Fowler v. Black, 11 L. R. A., 670 [Ill.]; 1 Story Eq. Jur., secs. 137-138; Goltra v. Sanasack, 50 Ill., 456; Snell v. Atlantic F. & M. Ins. Co. U. S., 25 L. Ed., 52; Hunt v. Rousmaniere, 1 Peters, p. 1; Dever v. Dever, 44 S. W., 986 [Ky.].)

12. No recovery can be had for a mistake, either of law or fact, where both parties acted in good faith and each had equal and adequate means of information. (Western German Savings Bank v. Farmers & Drovers Bank, 10 Bush, 669.)

E. B. ANDERSON, GEO. W. JOLLY and G. B. LIKENS for appellees.

### POINTS AND AUTHORITIES.

1. The $4,000 of bonds of appellant, Fordsville Graded Common School District, having been issued in violation of sec. 157 of the Constitution of the State of Kentucky, are void; but the whole

of the proceeds from the sale of these bonds having been used by the trustees of the district in buying a lot, and building a schoolhouse thereon, the trustees hold said property, and have so always held it, in trust for the persons who purchased the bonds. (Litchfield v. Ballou, 114 U. S., 132 [L. Ed.]; Wrought Iron Bridge Co. v. Town of Utica, 17 Fed. Rep., 316; Chapman v. Douglas Co. Com'rs, 107 U. S., 378 [L. Ed.]; Crampton v. Zabriskie, 101 U. S., 1070 [L. Ed.]; Gillette-Herzog Mfg. Co. v. Canyon Co., 85 Fed. Rep., 396; Parkersburg v. Brown, 106 U. S., 245 [L. Ed.]; Geer v. School Dist. No. 11 in Ouray Co., 111 Fed. Rep., 682; Com'rs Kearney Co. v. Irvine, 126 Fed. Rep., 689; Pomeroy Eq. Jur., sec. 1053; Beach on Trusts and Trustees, sec. 229.)

2. "The obligation to do justice rests upon all persons, natural and artificial, and if a municipality obtains money or property without authority, the law, independent of any statute, will compel restitution or compensation." (Wrought Iron Bridge Co. v. Utica, 17 Fed Rep., 316; Chapman v. Douglas Co. Com'rs, 107 U. S., 378 [L. Ed.]; March v. Fulton Co., 10 Wallace, 676-684; Louisiana v. Wood, 102 U. S., 294-299.)

3. The acts of the trustees of the Fordsville Graded Common School District in issuing the bonds in violation of the Constitution, and obtaining therewith the money with which they bought the lot and built the schoolhouse thereon, and taking the legal title of the property to themselves, in law is a constructive trust, and not a resulting trust, which is now inhibited by the statute. (Graham v. King, 96 Ky., 339; Pomeroy's Eq. Jur., sec. 1053.)

4. Appellees have the right to call on the appellants to convey the schoolhouse property to them, in disaffirmance of the illegal contract, the transaction being merely malum prohibitum and the school district being the principal offender. Such a right passes to the appellees as incident to the bonds. (Parkersburg v. Brown, 106 U. S., 245 [L. Ed.]; Geer v. School Dist. in Ouray Co., 111 Fed. Rep., 690; Board of Com'rs v. Irvine, 126 Fed. Rep., 693; Shirk v. Pulaski Co., 4 Dill., 209, Fed. case 12,794.

5. Although the bonds of the Fordsville School District are void, and no recovery can be had thereon, yet by the purchase of the bonds by appellees they acquire all the rights of the persons to whom the bonds were originally sold, and appellees have the right to compel the district to convey the schoolhouse property to them, and can assert the same rights, and are entitled to the same relief, that the persons who originally owned the bonds could have asserted, and were entitled to. (Parkersburg v. Brown, 106 U. S., 245 [L. Ed.]; Geer v. School Dis. in Ouray Co., 111 Fed. Rep., 690; Board of Com'rs v. Irvine, 126 Fed. Rep., 693; Shirk v. Pulaski Co., 4 Dill, 209, Fed. case, 12,794.)

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

In the year 1897 the trustees of the Fordsville Graded Common School District issued bonds to the amount of $4,000 on behalf of the district for the purpose of providing it with a lot, schoolhouse and suitable furniture. The bonds were sold, and the trustees used the proceeds of the sale in buying a lot, building a schoolhouse, and furnishing it. But no vote of the legal voters of the district was taken before the issual of the bonds, and they were adjudged void under sec. 157 of the State Constitution: "No county, city, town, taxing district or other municipality shall be authorized or permitted to become indebted in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the persons with whom made; nor shall such municipality ever be authorized to assume the same."

The holders of the bonds, being in part the original purchasers and in part persons who had bought the bonds from them, instituted this action in equity, asking that the lot, house and furniture which was purchased with the proceeds of the bonds be transferred to them; and the court having adjudged them the relief sought the school district appeals.

Appellant relies on Grady v. Pruitt, 111 Ky., 100; 23 Ky. Law Rep., 506, 63 S. W., 283, and Grady v. Landram, Id., 284. In these cases the contractor who had built the schoolhouse, and to whom a balance of $604 was due, sought in the first case to hold the trustees personally liable, and in the second to remove

the house or such part of it as would be of value $604, or place the house in the hands of the receiver. The district had paid him $2,173 on the contract. It was held in the first case that the trustees were not personally liable, and in the second that, the building being a single structure, a part of it could not be removed without injury to the remainder, and, the district having paid $2,173 on the building, the chancellor could not destroy $2,173 worth of property belonging to the district to give the contractor $604. It was also held in these cases that the contract being void under the Constitution, could not be enforced, directly or indirectly, and therefore that the property could not be placed in the hands of a receiver. To the same effect is the opinion of the Supreme Court of the United States in Litchfield v. Ballou, 114 U. S., 190, 5 Sup. Ct., 820, 29 L. Ed., 132. In that case the city of Litchfield had issued bonds which were void under the Constitution, and with a part of the proceeds of the bonds and other funds had constructed a system of waterworks for the city. The land on which the works were constructed was bought before the bonds were issued. The streets through which the pipes were laid were public property then owned by the city, and much of the expense of the construction of the waterworks was paid by taxation or other resources of the city. The plaintiffs were unable to identify the property which represented the money they had paid, so that it could be reclaimed and delivered without taking other property or injuring other persons or interfering with their rights. The bill was dismissed.

The case before us is distinguishable from these cases. The money which the plaintiffs paid is distinctly traced into the schoolhouse, the lot and furniture, and no other money went into them. This prop-

erty can be reclaimed, without taking any other property with it or injuring any other person or interfering with his rights.

In Chapman v. Douglas County, 107 U. S., 348, 2 Sup. Ct., 62, 27 L. Ed., 378, land was conveyed to a county for a poorhouse. The county had no authority under the law to buy the land. It was held that the county must give up the land to the vendor, when it failed to comply with its, contract; in other words, that it could not keep the land which it had received under the illegal contract.

In Geer v. School District, 111 Fed., 682, 49 C. C. A., 539, it was held by the Circuit Court of Appeals of the United States of the Eighth Circuit, that where a school district issued bonds without authority and used the proceeds to pay a debt which it owed, the bondholders were entitled to be subrogated to the rights of the creditors whose debts their money had paid, the bonds being void. The same principle was followed by the same court in Kearny County v. Irvine, 126 Fed., 689, 61 C. C. A., 607, where a county issued bonds and used the proceeds to pay off the outstanding county warrants which it was authorized to issue. The bonds being void under a constitutional provision similar to ours, it was held that the bondholders were entitled by subrogation to the rights of the holders of the county warrants which had been paid off with the proceeds of the bonds.

No liability, direct or indirect, may be imposed upon the school district under the bonds in question. It is not liable on the bonds, nor can it be made liable by indirection in any way. But, if we ignore the bond transaction altogether, what have we? The district received $4,000 from the bondholders. The bonds being void, the district should have returned the money to the bondholders. If the bondholders

Board of Trustees of Fordsville, &c. v. Postel, &c.

had learned of the invalidity of the bonds while the
district still had the $4,000 in its treasury which they
had paid to it, manifestly a court of equity would
have required the district to pay back their money
to them.    It was money obtained by a mutual mis-
take.    While under the Constitution no liability
would attach to the district for the money if it had
lost it or if it had spent it and the fund could
not be identified and followed, where it may be fol-
lowed and identified, there is no more reason why
property which represents the fund should not be re-
turned than there would be for not returning the
money, if it had been placed in a bag and the district
had the bag locked up in its safe.    The purpose of
the Constitution is not to enrich municipalities at
the expense of innocent people who deal with them,
and when they repudiate their bonds they must act
honestly.    A loss must not be placed upon the dis-
trict; but, when justice may be done without inflict-
ing any loss upon the district, equity will lay hold
of the conscience of the parties and make them do
what is just and right.    To illustrate: If, while the
common law disability of coverture was in force, a
married woman had borrowed $400 and given her
note for it; and, when sued on the note, had pleaded
her coverture, if she still had the $400 in bank,
equity would have required her to surrender the
money, or if she had invested the $400 in a horse,
and the fund could be clearly identified, equity would
compel her to surrender the horse.    In other words,
as has been held, coverture is a shield, not a sword,
and a married woman is never allowed to use her
coverture to enrich herself at the expense of others.
(Chilton v. Braiden, 2 Black, 458, 17 L. Ed., 304.)
The same rule has been applied in the case of in-

Board of Trustees of Fordsville, &c. v. Postel, &c.

fants.   (Ison v. Cornett, 116 Ky., 92, 75 S. W., 204, 25 Ky. Law Rep., 366, and cases cited.)

Sec. 2353, Ky. Stats. 1903, is relied on for appellants: ''When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person.''

This statute was not intended to affect the equitable doctrine that equity would follow a fund and compel restitution as long as it could be identified and followed.   It was not the aim of the statute to enable one person to keep the money of another, and thus be enriched at his expense, simply because, instead of holding the money in specie, he has invested it in a tract of land.   The true owner of a fund may in equity pursue it, where it is clearly identified, equally whether it has been transmuted by the holder into personalty or realty.   Properly, under the statute, he should not be adjudged the land, but a sale of it to satisfy his claim.   But in this case appellants are not prejudiced by the form of the judgment, as the property is not of value more than the fund.   We see no reason why the right to follow a fund should not be applied against municipalities under the clause of the Constitution above quoted, just as it is against other persons obtaining the property of another under a void contract, where the fund may be identified and is separated from other property of the municipality.   The present holders of the bonds stand by subrogation in the shoes of the original purchasers from whom they bought, and under the Code the ac-

tion may be maintained in the name of the real party in interest. The judgment complained of does justice between the parties, and we see no reason for disturbing it.

Judgment affirmed.